24064. FORT, Executrix, et al. v. FORT, Executrix, et al.

ARGUED MAY 8, 1967—DECIDED JUNE 9, 1967.

*Davis & Friedin, Roy B. Friedin,* for appellants.

*Jesse G. Bowles,* for appellees.

ALMAND, Presiding Justice.   Miss Amelia Fort, the appellant and sister of Arthur Fort, in her capacity as executrix and trustee under the will of Arthur Fort filed her complaint against Mrs. Martha Fort, the appellee and widow of Arthur Fort, individually and in her capacity as co-executrix and co-trustee under the will of Arthur Fort.   The primary purpose of the action was to have the court declare the rights and duties of the appellee, Mrs. Martha Fort, relating to the cutting and removing of timber from certain real estate in which she held a life estate and in which the appellant, Miss Amelia Fort, had a remainder interest under the will of Arthur Fort.

Appellant alleged in her petition that: "The defendant, Mrs. Martha Fort, is not a life tenant with respect to the real estate mentioned in article numbered eighteen of the will and that she, the said defendant, is a life income beneficiary and that she, the said defendant, is adequately supported without any necessity to resort to the corpus of the property left to the executors in trust, and that neither the co-executors nor trustees nor the individual defendant had the right to consent to, or to commit, an act tending to the permanent injury of the remaindermen, and the defendant, Mrs. Martha Fort, contends that she is a tenant for life and is entitled to the full use and enjoyment of the timbered real estate, included in the residuum and that she can cut any timber and retain the proceeds, and in this connection the plaintiff shows that in an account for income tax purposes in connection with the estate of the decedent, Arthur T. Fort, for

the year ending 30 June 1966, to which return the plaintiff does not assent, there appears as proceeds from disposition of timber $28,413.87 as 'distributed income to beneficiary,' meaning by the term 'beneficiary' the individual defendant.

"The removal of the timber of which mention is made in the next preceding paragraph was over the protest of the plaintiff and not in the exercise of good husbandry and was not an act which could be done by the defendant as an individual nor by the defendant as an executor or trustee without the conjoint act and concurrence of the plaintiff executor and trustee.

"Some timber remains which the individual defendant intends to cause to be cut, felled and removed, and thus a justicable controversy arises, and in order to avoid the risk of taking any future undirected action and in order to settle and afford relief from uncertainty of the rights of the parties the plaintiff is entitled to ask for, and does ask for, a declaratory judgment determining issues of fact and of law and to the grant of a temporary restraining order to maintain the status quo pending a declaratory adjudication of the rights, status and other legal relations."

In her answer the appellee alleged: That a vast majority of the lands in which she was devised a life estate are timber lands seeded in pine and hardwood trees. That a part of the hardwood timber was fully mature, and in the practice of good forestry and husbandry to improve the stands of timber and to protect the value of the freehold and remainder interest, said hardwood timber needed to be cut. "That in order to improve said lands, and the stand of trees thereon; to protect and preserve the value of said lands; and in order to preserve and protect the remainder interest in said lands; and in the practice of good forestry and husbandry, defendant had a professional forester to determine, mark and designate which of said undesirable trees should be cut and after so determining, had said trees removed from the land." That "[t]he principal value of the lands is the trees and timber thereon. Said lands yield little or no income, except from their tree and timber growth. That the taxes on said lands are extremely high and this defendant is charged with the responsibility of paying the same. That without the pro-

ceeds yielded from exercising good, sound forestry practices on said lands, this defendant would have little or no income therefrom and would be solely charged with the taxes and other expenses attendant upon maintaining and preserving the same. That all of the acts of defendant exercised on said lands were with ordinary care of a prudent man with no acts tending to the permanent injury of those persons entitled in remainder. That it was and is the custom of this section of the country for prudent and judicious owners of lands to exercise and perform all the acts performed on said lands by this defendant. That said acts of defendant do not amount to waste, do not injure the realty, but in truth and fact improve the same." That "[d]efendant shows there are many other acres on said estate's lands that need the same or similar attention and management as those acres recently improved by defendant. That plaintiff contends the defendant is entitled to none of the proceeds produced from sales of trees removed from said lands in carrying out good husbandry and forestry practices. The parties cannot agree on any method of marking trees, cutting the same, and improving said lands. That a genuine stalemate or impasse has been reached and the exercise of their powers in this respect is now impossible."

The case came on for a trial before the court and a jury. By consent and agreement of the parties the only question submitted to the jury was: "Did the defendant (appellee) commit waste on said real property?" The jury found in favor of the appellee; and the court entered a final decree construing the will of Arthur Fort, with respect to the properties devised under Item 18 and in light of other provisions of the will, as leaving his widow, the appellee, all the rights, benefits and privileges of a life estate in said properties. The court further ordered that the conduct of the life tenant in cutting and removing timber did not amount to waste.

The appellant has filed her appeal from the verdict and decree assigning error on eleven grounds.

■ Enumerations of error 1, 2 and 3 assert that the court erred in refusing to give three of appellant's requested charges to the jury. In substance these requested charges were that trustees having possession of the trust property are bound to use ordinary

diligence in the preservation and protection of the same, and ordinary diligence means that care which every prudent man takes of his own property.

It was not error to refuse to give these requested charges to the jury. The court in construing the testator's will held that his wife, Mrs. Martha Fort, received a life estate in the timberlands involved, and as a life tenant she was entitled to all the rights, benefits and privileges of a life estate. By consent of the parties the only issue submitted to the jury was whether the life tenant had committed waste. This issue did not involve any question as to the duty one trustee owed a co-trustee. Mrs. Martha Fort's possession of the property was as a life tenant and not as a trustee for the remainderman. *Lazenby v. Ware*, 178 Ga. 463 (173 SE 86).

■ It is asserted that the court erred in charging the jury that "in order to commit waste, it must appear that such acts amount to a wilful injury of the freeholder and do not come within the ordinary and legitimate use of the premises by the one holding the antecedent estate, or the life estate." Appellant excepted to the use of the word "wilful." The use of this word was equivalent to charging actual intent to commit waste, and it was not necessary that the court further define the meaning of the word "wilful" as contended by the appellant.

■ Enumerations of error 5 and 6 complain of the court's overruling appellant's objections to the appellee's testimony as to (a) the amount of taxes she had paid on the timber land in which she had a life estate and (b) the valuation of the timber on the land in the inventory of the timber at the time of the death of the testator. Both of these items were relevant to the question in issue, and it was not error to admit them in evidence.

■ Assigned errors 7, 8, 9 and 10 complain of the court's construction of the provisions of the will of the testator, the holding as to the right of the appellee as the life tenant to receive the income and benefits from such estate and the holding that the appellee as life tenant in the exercise of good husbandry could cut the timber and retain the proceeds from the sale thereof without the concurrence of the appellant as co-executrix and co-trustee.

After making specific devises and bequests in his will executed in March of 1943 in Item 18 thereof, Arthur T. Fort devised to his wife, the appellee, "the residue of my estate consisting chiefly of real estate in Stewart County, stock in the Farmers State Bank, and all other stocks, bonds, notes, accounts, cash, livestock and farming implements, and whatever else I may own, to my executors in trust, with instructions that this portion of my estate be kept intact until the death of my wife. Until that occurs the net income of this residium [sic] shall be paid to her, except as otherwise herein provided and if necessary, to encroach upon the estate for her support." In Item 11 of his will in devising the home place to his wife in fee simple Arthur Fort provided: "My first care is to properly provide for my wife and all the above is left to her absolutely and in fee simple in addition to life hereinafter created for her." The court properly construed the will determining the testator's intent to leave to his widow, the appellee, all the rights, benefits and privileges of a life estate. *Code* § 113-805 provides: "An unconditional gift of the entire income of property, or interest accruing from a fund, shall be construed into a gift of the property or fund, unless the provisions of the will require a more limited meaning." "The gift of the net annual income from the estate to the wife for and during her natural life was the equivalent of a life estate." *Gilmore v. Gilmore,* 197 Ga. 303 (3) (29 SE2d 74).

■ The eleventh and last enumeration of error is that there was no evidence to support the jury's finding that there was no waste committed by the appellee, life tenant.

*Code* § 85-604 provides: "The tenant for life shall be entitled to the full use and enjoyment of the property if in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion. For the want of such care and the wilful commission of such acts, he shall forfeit his interests to the remainderman, if he shall elect to claim immediate possession."

The evidence in the record discloses that: the lands on which it was claimed the life tenant committed waste were entirely covered with pine and hardwood trees; at the time of the death of

the testator in 1955, it was his practice to cut timber from these lands; at the time of testator's death, an inventory of timber on these lands showed its value to be $6,898.85; after the life tenant had cut and removed the trees in question the remaining timber on these lands was valued at $52,750; the only income from these lands was from the sale of wood or timber; taxes on the lands chargeable to the life tenant were $1,024 annually; the trees were cut and sold after the life tenant had employed a registered forester, who marked those trees that were diseased, crooked and inferior and those that needed to be thinned to improve the stand; if thick stands of trees are left on the land too long, they will stagnate and then thinning will do no good; there was testimony by witnesses qualified as experts in forestry that the timber practices on these lands by the life tenant had been prudently and properly exercised; the life tenant from her own funds had planted 216 acres in pines.

This court has many times had before it the question as to the right of the life tenant to cut timber, and whether or not such cutting constituted waste. In *Woodward v. Gates*, 38 Ga. 205 (5), this court laid down the rule that has been followed in this state, viz.: "The stringent rules of the English law, relative to waste, were not applicable to our condition; and were not embraced in our adopting statute. It is not always waste in this State for a tenant for life to cut growing timber, or clear land. Regard must be had to the condition of the premises; and the proper question for the jury to decide, under the instruction of the court, will be, did good husbandry require the felling of the trees, and were the acts such as a judicious, prudent owner of the inheritance would have committed?" In *Lee & Bradshaw v. Rogers*, 151 Ga. 838 (108 SE 371), the question was whether the life tenant had committed waste in the use of pine trees for turpentine purposes. In applying *Code* § 85-604 the court said: "In applying this statute regard must be had for the provisions of the instrument creating the life estate and the nature of the property in which the life estate was given, and the use to which it was put at the time the will was executed and when it went into effect. If a testator, having nothing but a turpentine farm which was a going concern, bequeathed that to his wife during

widowhood, it could hardly be said that the testator intended that she should take nothing under the will; yet that would be the effect if the trees on the farm could not be worked at all for turpentine purposes." In *Sutton v. Bennett,* 215 Ga. 379 (110 SE2d 650), the controlling question was whether or not the life tenant was authorized to cut and sell from the timberland trees that were removed from the property in the process of making an improvement by cutting in accordance with approved forestry practices. In that case the income of the life tenant was derived from turpentining the pines and properly thinning the pine timber and selling it for pulpwood. It was there said that "the jury was authorized to find that the cutting for thinning purposes was not harmful to the land in any way, but, on the contrary, was calculated to and did make the property more valuable."

The evidence in the instant case fully supports the verdict of the jury that good husbandry required the cutting and removing of the trees, and the cutting and removing were such acts as would have been exercised by a judicious and prudent owner of the remainder.

*Judgment affirmed. All the Justices concur.*