### A01A2106. ROBINSON v. HUNTER.
(562 SE2d 189)

RUFFIN, Judge.

Joy Robinson sued Fred Hunter to determine ownership to proceeds derived from the sale of timber cut on land in which Hunter holds a life estate and Robinson has a remainder interest. The trial court concluded that Hunter was entitled to the timber sale proceeds, granted him summary judgment, and denied Robinson's motion for summary judgment. Robinson appeals, and for reasons that follow, we affirm.

1. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[1] The facts in this case are undisputed. In 1985, Lucy Coleman died testate, leaving Hunter a life estate in her Hahira farm "for his exclusive use and enjoyment dur-

---

[1] OCGA § 9-11-56 (c).

ing his lifetime." Coleman's will further provided that, upon Hunter's death, the farm would pass to Robinson, "all to be hers absolutely and to be used or disposed of as she may see fit."

In 1999, Hunter arranged to sell most, but not all, of the farm's merchantable pine timber to a lumber company for $351,675. Under the timber purchase agreement, the lumber company agreed to harvest the trees pursuant to logging practices generally prevailing in the timber industry. Before the harvest, Hunter informed Robinson about the sale. Robinson subsequently filed this declaratory judgment action, asserting her rights to the timber proceeds. Shortly after suit was filed, the trial court ordered that the proceeds, less certain expenses, be held in escrow until it determined the rightful owner.

During the litigation, the parties stipulated that Hunter's "harvesting of the timber was in accordance with approved forestry practices and in conformity with good husbandry, and [did] not constitute waste." Hunter also testified by affidavit that his life estate in the farm had "many burdens and responsibilities, but little to no profit." According to Hunter, "the only substantial value a life tenant could expect from this land was to be found in the trees which have been growing there for the past 30 years (and longer)." Hunter further averred that he helped Lucy Coleman tend the pine trees on the farm and that, before her death, Coleman sold some trees to a local forest products company, although it is unclear whether those trees were located on the Hahira farm.

M. E. Coleman, a practicing forester hired by Hunter to supervise the timber harvest, also testified through affidavit. He stated that the trees at issue were fully mature and, in accordance with good forestry practice, needed to be harvested to avoid damage or destruction "from disease, insects, and fire." Coleman further testified that the harvested area would be completely reforested with new trees and that growing new, productive pine trees on this type of land "is the best forestry practice." According to Coleman, "trees are a renewable resource, a crop, both in theory and practice throughout [Georgia]."

Robinson moved for summary judgment, asserting that, as a matter of law, the timber sale proceeds should be ·invested, with interest from that investment payable to Hunter, but the principal payable to her on Hunter's death. Hunter also filed a summary judgment motion, arguing that he is entitled to all proceeds from the timber harvest. The trial court rejected Robinson's argument and granted Hunter summary judgment. We find no error.

Under OCGA § 44-6-83, a life tenant is "entitled to the full use and enjoyment of the property if in such use he exercises the ordinary care of a prudent man for its preservation and protection and

commits no acts which would permanently injure the remainder or reversion interest." On appeal, Robinson argues that nothing in Lucy Coleman's will authorized Hunter to sell or dispose of the timber. But "[i]rrespective of the powers of sale granted in the subject will, life tenants are empowered to cut and sell timber in order to preserve and protect the value of the land."[2] The undisputed evidence shows that the tree harvest was necessary, comported with good forestry practice, and did not constitute waste. And even Robinson admitted below that Hunter had a "right to harvest the timber." Nevertheless, she contends that the harvest proceeds belong to — and must be held in trust for — her.

We disagree. In *Sutton v. Bennett*,[3] our Supreme Court considered whether a life tenant of a wooded tract was authorized to derive income from cutting and selling pine timber for pulpwood. Because cutting the timber was necessary to " 'preserve and protect' " the land, the Court concluded that the life tenant's income-producing activities fell within his full use and enjoyment of the property.[4] Similarly, in *Fort v. Fort*,[5] the Supreme Court affirmed the trial court's holding that a "life tenant in the exercise of good husbandry could cut the timber and retain the proceeds from the sale thereof." Although a life tenant cannot remove timber *solely* for profit, he "may, when it is good husbandry and 'necessary to the enjoyment of his use' to clear off timber to prepare land for cultivation, sell the timber so cut."[6]

The evidence shows that Hunter did not simply remove trees from the Hahira farm for profit. Instead, good forestry practice dictated that the trees be cut and the area reforested to replace the harvested timber, as proposed by Hunter. The record further establishes that the timber sale represents the only substantial income a life tenant could expect from the farm and that Hunter helped Lucy Coleman tend the trees for many years.

Given these circumstances, we find that Hunter was entitled to cut the trees, sell them, and retain the proceeds as part of his full use

---

[2] *Grant v. Bell*, 246 Ga. 371, 372 (271 SE2d 467) (1980).

[3] 215 Ga. 379-380 (1) (110 SE2d 650) (1959).

[4] Id. at 380.

[5] 223 Ga. 400, 404-405 (4) (156 SE2d 23) (1967).

[6] *Higgins v. State*, 58 Ga. App. 480, 481 (199 SE 158) (1938). In her brief, Robinson asserts that "[a] life tenant cannot sell the timber growing on the property subject to the life estate." For support, she cites *Brogdon v. McMillan*, 116 Ga. App. 34 (1) (156 SE2d 828) (1967), in which we stated that a life tenant, who by statute cannot act in a way that permanently injures the remaindermen, "may not sell *all* the timber on the land." (Emphasis supplied.) The *Brogdon* decision, however, does not govern here because Hunter has not harvested or sold *all* of the timber on the Hahira farm. Furthermore, *Brogdon* recognized that timber may be harvested where required by good husbandry. See id.

and enjoyment of the land.[7] Accordingly, the trial court properly granted Hunter summary judgment and denied Robinson's summary judgment motion.

2. Robinson also argues that the trial court erroneously concluded that expenses relating to the timber harvest should be paid out of the sale proceeds. As we found in Division 1, however, Hunter is entitled to the harvest proceeds, and he does not object to paying the expenses out of that fund. Accordingly, Robinson's final enumeration of error presents no basis for reversal.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 11, 2002 —
RECONSIDERATION DENIED MARCH 19, 2002 — 

*Smith & Jenkins, Wilson R. Smith*, for appellant.
*May & Horkan, Dwight H. May, H. L. Cole*, for appellee.

---

[7] See *Sutton,* supra; *Fort,* supra. Cf. *Campion v. McLeod,* 108 Ga. App. 261 (1) (132 SE2d 848) (1963) (life tenant lacked authority to cut and sell timber where *no evidence* showed "that the cutting of timber . . . was for the purpose of providing the life tenant with firewood or for the purpose of clearing up land for cultivation or in the exercise of good husbandry or forestry").