## A05A0853. CARDEN v. CARDEN.
(622 SE2d 389)

BLACKBURN, Presiding Judge.

Following a November 10, 2004 order finding her in criminal and civil contempt of court for failure to abide by the terms of an agreement between Robert Carden (Son) and Lois E. Carden (Mother), as provided in a 1998 consent order, Mother appeals. The trial court found that Mother was bound by the terms of the consent order, and that she was estopped from contesting the findings in that order in any other proceeding after the June 18, 1998 entry of that order, which has never been set aside. The court found beyond a reasonable doubt that Mother was in contempt of the 1998 consent order, both for the filing of two suits in Fulton County for the purpose of interfering with Son's business and in her failure to execute a document subordinating all of her interest in property in south Fulton County on Gullatt Road, consisting of approximately 25 acres known as "The Farm."[1]

The court awarded Son the sum of $1,650 in attorney fees for the defense of the two lawsuits in Fulton County, the sum of $1,050 in attorney fees for the filing of this contempt action, and the sum of $300 for filing fees and special agent for service fees. The court further assessed a $500 fine against Mother for her wilful contempt of the June 18, 1998 order, by the filing of the two lawsuits in Fulton County. The court further found Mother to be in civil contempt of the subject order and ordered that she be incarcerated until such time as all documents required by the subject order are signed by her. The court deferred the execution of Mother's incarceration for a period of 60 days to allow her to purge herself of that portion of her contempt by completing the signing of all such documents.

When Mother's counsel inquired as to the effect of the pending trespass case in Fulton County by asking, "are you saying the trespass or a portion of that is a violation of [the June 18, 1998] order as it relates to the life estate," the court responded, "I'm saying, sir, that the order that this Court entered in 1998 enjoins your client from even filing that lawsuit and if it continues on, this Court will sanction

---

[1] As required by paragraphs 2 and 7 of the June 18, 1998 order.

her again. Is that clear enough for you? . . . [I]f you continue over there, they can come back and ask again and we'll hold her in contempt again."

After acknowledging the clarity of the court's response, Mother's counsel asked, "Under the 2000 order issued by Judge Fryer enabling her to have interest, she has the right to file based upon that order?" The court responded, "No, sir, I disagree. She's bound by what she did in 1998, and that order predates Judge Fryer's order, in other words, never been set aside. So between her and Robert Carden, the order in this Court controls. And she agreed that he owned it. It's in paragraph one of the order that her lawyer wrote and she's bound by that."

Mother appeals, contending that she cannot be held in contempt because (1) the consent order was too indefinite to require her to execute any documents; (2) the consent order did not prohibit her from filing certain lawsuits; (3) the facts underlying the consent order changed when a different court issued a separate order; and (4) the trial court misinterpreted the consent order. Because we find that the consent order, standing alone, contains an insufficient description of real estate to satisfy the statute of frauds,[2] and because Mother was not in contempt in any event, we reverse.

We determine the standard of review from a finding of contempt by determining whether the punishment for the contempt is civil or criminal.

> On appeal of a criminal contempt conviction the appropriate standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In civil contempt appeals, if there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion.

(Punctuation and footnote omitted.) *In re Waitz*.[3]

Here, the trial court found Mother guilty of criminal contempt in filing the Fulton County lawsuits for the purpose of interfering with Son's business, for which it imposed a $500 fine and monetary assessments, and of civil contempt for failing to execute certain documents, for which it ordered Mother incarcerated "until such time as all documents required by said previous Order are signed by her."

---

[2] OCGA § 13-5-30 (4).
[3] *In re Waitz*, 255 Ga. App. 841, 842 (567 SE2d 87) (2002).

Because the evidence does not support its ruling, and the trial court abused its discretion, and no rational trier of fact could find Mother guilty beyond a reasonable doubt, we reverse the finding of contempt.

The record shows that in February 1989, and thereafter, Mother, who cannot read, was involved in certain real estate transactions with her sons Elvis and Robert, where she conveyed certain property, including property referred to in this contempt action as "The Farm" and one acre in Fayette County on Wilkens Road known as the "Guitar House." Disputes arose concerning the properties, and an agreement was purportedly reached in 1991, concerning these matters, which agreement is not a part of this record. The consent order in June 1998 acknowledges that there was pending, at that time, a quiet title action against Mother and Son by Elvis Carden in Fulton County Civil Court, and that a lis pendens was placed on The Farm property.

The record shows that with such action pending in Fulton County affecting the property, in 1998 Mother and Son entered into a consent order in a Douglas County action, to settle disputes over the management of Mother's affairs. The consent order states in part:

> All parties acknowledge that there was an agreement in March of 1991 that [Son] was to take over the management of [Mother's] affairs. [Mother] was to turn over to [Son] all of her assets, including . . . [The Farm]. . . .
> The parties confirm that [Son], then and now had and has title to The Farm. . . .
> [Mother] shall have a life estate in a one-half (1/2) interest in The Farm property, said life estate being non-transferable, non-assignable, non-encumberable, and non-saleable by [Mother], and said life estate shall not in any way interfere with the existing salvage yard operation that [Son] currently has existing on the property. . . .
> [Mother] shall subordinate all of her interest in The Farm property, received by her through this Order, to allow [Son] to transfer any existing indebtedness he owes on the Guitar House to The Farm property or acreage, and [Son] shall continue to be responsible for the payment of such indebtedness.

The consent order was not appealed.

Following the entry of the consent order, Son expanded his salvage yard from its original area to the boundaries of the property. In doing so, he cut down trees and erected a fence around the property to facilitate the salvage operation.

Elvis Carden's Civil Action E-65292 to quiet title against Mother and Son, was heard before Judge Fryer on May 2 through 4, 2000, and

he issued his ruling on February 13, 2001, all parties having waived a formal findings of fact and conclusions of law. Judge Fryer ruled that

> [t]his Court concludes that Mrs. Lois Carden did not have the mental capacity to enter into the transactions, which are the subject matter of this lawsuit. Therefore, this Court declares null and void the instruments which convey title as from Lois Carden to her son, Elvis Carden; from Elvis Carden to Lois Carden; from Lois Carden to her son, Robert Carden, and enumerated below.

The court then enumerated the deeds involved.

Judge Fryer further held that "[t]his Court further finds that after setting aside the foregoing deeds, Lois Elvgreen Carden owns said interest in the farm as the deed records of Fulton County will reflect, taking into account the aforementioned cancelled deeds."

The February 13, 2001 order also ruled that "[a]s this Court ordered that a guardian would be appointed and such appointment has been made by the Probate Court of Fayette County Georgia, this Court adopts said appointment of Teresa Carden-Tallman Zevallos and Linda Carden Hayes to serve as co-guardians of the property of Lois Elvgreen Carden." We note that Son, through counsel, participated in this action, did not appeal the Fulton County ruling, and it has not been set aside. The ruling sets aside all deeds which formed the basis for Son's contention of ownership prior to the June 18, 1998 consent order.

On June 27, 2003, Mother filed suit in Fulton County[4] against Son to stop his expansion and interference with her rights, as she considered his actions to be a trespass against her interest in the property.[5] Son responded by filing the instant motion for contempt, contending that Mother's actions violated the terms of the consent order requiring noninterference with Son's salvage yard operation, and that Mother improperly refused to execute the documents necessary to subordinate her interest in the property to his. The trial court agreed with Son and found Mother in contempt of the consent order both for failing to execute the documents and for filing suit.

---

[4] Mother actually filed two suits; the first on October 22, 2002, which she dismissed because she had named an incorrect party defendant.

[5] The nature of Mother's interest in the property is unclear, given the Douglas County Superior Court's 1998 order and its November 2004 contempt order, especially in light of Fulton County Superior Court's setting aside of all conveyances based on mental incompetence at the time of their execution.

1. In her first enumeration of error, Mother contends that the trial court erred in finding that the consent order granted her a life estate, and therefore improperly found her in contempt of the consent order for failing to execute the documents necessary to subordinate her life estate to Son's interest. We agree to the extent that the language in the consent order does not sufficiently identify the property to which Son claims ownership, or for the conveyance of a life estate so as to satisfy the statute of frauds applicable to contracts for the transfer of an interest in real property.[6] These being the heart of the consent order, their unenforceability rendered all other provisions of the consent order likewise unenforceable.

"[A] consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts." *City of Centerville v. City of Warner Robins.*[7] It therefore must satisfy the statute of frauds just as any other contract for the transfer of an interest in real property. *Owenby v. Holley;*[8] *Allen v. Smith.*[9]

> To satisfy the statute of frauds, a contract [transferring an interest in land] must describe the property . . . with the same degree of certainty as that required in a deed conveying realty. However, a perfect description is not required. All that is required is that the contract furnish a key to the identification of the land. If the premises are so referred to within the contract as to indicate the [transferor's] intention to convey [an interest in] a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The legal sufficiency of a description is a question of law for the court.

(Punctuation and footnotes omitted.) *Bulloch South, Inc. v. Gosai.*[10] We review the trial court's ruling de novo. *Mon Ami Intl. v. Gale.*[11]

The consent order describes The Farm as "property in South Fulton County on Gullatt Road, consisting of approximately twenty-five acres." The order contains no other information, such as a mailing address, from which the land can be identified with specificity. Cf. *Bulloch South,* supra at 173. Even this vague description might suffice however, if the consent order provides a key referring to

---

[6] OCGA § 13-5-30 (4).

[7] *City of Centerville v. City of Warner Robins,* 270 Ga. 183, 186 (3) (508 SE2d 161) (1998).

[8] *Owenby v. Holley,* 256 Ga. App. 13, 16 (2) (567 SE2d 351) (2002).

[9] *Allen v. Smith,* 169 Ga. 395, 396 (7) (150 SE 584) (1929).

[10] *Bulloch South, Inc. v. Gosai,* 250 Ga. App. 170, 172-173 (1) (550 SE2d 750) (2001).

[11] *Mon Ami Intl. v. Gale,* 264 Ga. App. 739, 740 (1) (592 SE2d 83) (2003).

competent extrinsic evidence so that the property's "precise location is capable of ascertainment and its identity can thus be established." (Punctuation omitted.) *Makowski v. Waldrop;*[12] *Bulloch South,* supra.

As the record contains no document from which the property description can be ascertained, and the consent order neither incorporates nor references such document, or provides such key, the consent order does not satisfy the requirements of the statute of frauds,[13] and cannot support a contempt finding based on such order. Thus, the contempt ruling must be reversed in all respects. We note that even if the contempt ruling did not contain this defect, it could not stand based on the clear abuse of the trial court's discretion and interpretation of the June 18, 1998 order.

2. Moreover, even if the order were enforceable, Mother was not in contempt. In interpreting the consent order, the trial court found that Mother, who, under the consent order, received a life estate in The Farm, was in contempt for bringing suit against Son to stop his interference with her interest in the property, by his expansion of the salvage yard. The trial court construed the language that Mother's "life estate shall not in any way interfere with the existing salvage yard operation that Son currently has existing on the property" in such a way as to ignore the rights of a life tenant, and the limitation of the right to run a salvage operation to the area in use as of June 18, 1998.

OCGA § 44-6-83 provides inter alia that "[t]he tenant for life shall be entitled to the full use and enjoyment of the property if in such use he exercises the ordinary care of a prudent man for its preservation and protection and commits no acts which would permanently injure the remainder or reversion interest." A life tenant is entitled to the full use and enjoyment of the property, including the shack, the use of which Son has interfered with. See *Robinson v. Hunter.*[14]

While Son contends he has every right to use the entire twenty-five acres for a salvage yard if he wishes, the testimony of Mother and Elvis indicates that the original salvage area was approximately four acres, which Son later expanded to cover parts of the entire property, and that Son had graded down five acres of trees. It is undisputed that Mother had a shack on the property, with a dirt access road, which she used with great regularity before it was ditched by Son or his agents to preclude access to the shack, and a 12-foot fence was put around the

---

[12] *Makowski v. Waldrop,* 262 Ga. App. 130, 132 (1) (a) (584 SE2d 714) (2003).
[13] OCGA § 13-5-30 (4).
[14] *Robinson v. Hunter,* 254 Ga. App. 290 (562 SE2d 189) (2002).

entire property. Also, the aerial photograph, Respondent's Exhibit 1, taken August 31, 2004, clearly disputes Son's conflicting testimony on this point.

In the November 10, 2004 contempt order, the trial court accepted Son's attorney's argument that there is nothing in the consent order which restricts the salvage area to four acres. The court stated in its order that "[t]he Court rejects her current argument that the salvage operation was limited to only four acres. The Consent Order does not mention such a limitation." The order did limit the salvage activity to "the existing salvage yard operation that [Son] currently has existing on the property." If the operation used only four acres, then that is the limitation upon Son's use of the property for salvage. The trial court erroneously concluded that Mother's contention is a new attempt to limit Son's use of the property for salvage.

Assuming as the trial court did, that Mother has an enforceable life estate pursuant to the consent order, such an estate enjoys certain rights as outlined above. We note however, that at the contempt hearing, the trial court described Mother's rights in The Farm as follows: "A life interest and a half interest — a life estate and a half interest is what the order says. That's what — if you read it closely, it says." To which Son's attorney responded: "Yeah."

While it is not necessary to unravel the meaning of these comments when compared to the language of the consent order, it is clear that the trial court erred and abused its authority in ordering Mother, who is presently at least a life tenant under the consent order and a vested owner under the unchallenged order of the Fulton County Superior Court, not to protect her legal rights in the property in the future, in a court of proper jurisdiction, on threat of sanctions, including incarceration.

In its contempt ruling, the trial court attributed Mother's filing of a lawsuit to stop Son from expanding his salvage operation and interfering with her rights to use the property, as simply being done so as to interfere with Son's rights. Given the facts of this case, there is no basis for such a conclusion, which ignores Mother's right to protect her interest against one who is interfering therewith. "The owner of a life estate in realty may bring and maintain [action] against one who wrongfully [interferes with] possession of the premises." *Smallpiece v. Johnson.*[15]

The trial court concluded, however, that Mother had no right to take any further legal action to protect her rights, either as a life tenant under the consent order or under her ownership interest pursuant to the 2004 Fulton County order restoring her property

[15] *Smallpiece v. Johnson*, 210 Ga. 310, 313 (2) (80 SE2d 296) (1954).

rights. The trial court stated to Mother that "you don't have the right to file the suit under the 1998 order." This is clearly erroneous, as even under the judge's analysis, Mother had a life estate, and the trial court's threat of future sanctions for protecting her rights is an abuse of its discretion. We accordingly reverse the finding of contempt.

In light of our holding, we need not reach the remaining enumerations of error.

*Judgment reversed. Miller and Bernes, JJ., concur.*

DECIDED OCTOBER 7, 2005 —
RECONSIDERATION DENIED OCTOBER 21, 2005.

*Robert L. Mack, Jr.,* for appellant.
*Defoor & Jones, Donald F. Defoor, Jett & Liss, Adam G. Jett, Jr.,* for appellee.