**THIRD DIVISION**
**ANDREWS, P. J.,**
**ELLINGTON, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 2, 2013**

# In the Court of Appeals of Georgia

A13A0783. IN RE: BURLEIGH L. SINGLETON.

A13A0784. VAN LEUVAN v. CARLISLE.

ELLINGTON, Presiding Judge.

These consolidated appeals arise from an order in an ongoing visitation dispute between Kellie Van Leuvan, the mother of a minor child (hereinafter, "the mother"), and Connie Carlisle, the child's maternal grandmother ("the grandmother"). In the order, the Superior Court of Fulton County found the mother to be in willful civil contempt of its temporary visitation order, and it ordered the mother and her former attorney, Burleigh Singleton, to pay the grandmother the attorney fees that resulted from her having to prosecute two contempt motions against the mother, pursuant to OCGA § 9-15-14 (a) and (b). In Case No. A13A0783, Singleton contends that the court erred in ordering him to pay OCGA § 9-15-14 attorney fees. In Case No.

A13A0784, the mother contends that there is insufficient evidence to support the court's contempt ruling; she also challenges the court's order that she pay OCGA § 9-15-14 attorney fees. Because the record supports the court's order and we discern no error or abuse of discretion, we affirm the judgment in both cases.

The record shows the following, undisputed facts. In February 2011, the grandmother filed a petition asking for visitation with her granddaughter, who was four years old at the time and was living with her mother, who was divorced from the child's father. On May 31, 2012, following an evidentiary hearing, the trial court issued a temporary order (hereinafter, the "visitation order") in which it found that the grandmother had met her burden, under OCGA § 19-7-3 (a), of showing that she was entitled to visitation with the child. The visitation order stated, in relevant part, as follows:

> Petitioner [(i.e., the grandmother)] shall have the following visitation with the minor child[:] . . . 1. Petitioner shall have seven (7) uninterrupted days of visitation with [the child] during the summer months of June, July, or August. Respondent [(i.e., the mother)] shall determine within five (5) days of this order when [this visitation shall occur]. . . . 2. During the school year, August through May,

Respondent[1] shall have one (1) Thursday night with [the child] per month. The designated Thursday night shall correspond with [the child's] visitation with her father . . . that is to begin the following Friday. Respondent shall pick [the child] up from school on the designated Thursday and return [the child] to school the following Friday morning.

The mother filed an application for interlocutory review of the visitation order, and this Court granted the application. Pursuant to that appeal, this Court vacated the visitation order because it did not contain the court's specific findings of fact, as required by OCGA § 19-7-3 (c). See *Van Leuvan v. Carlisle*, __ Ga. App. __, __ (1) (Case No. A13A0048, decided _____, 2013). This Court remanded the case back to the trial court with directions to issue an order that complied with OCGA § 19-7-3 (c). Id.

While the appeal from the visitation order was pending, the mother notified the grandmother that she had designated the week beginning August 13, 2012, for the grandmother's seven uninterrupted days of "summer" visitation, as required by the order. The grandmother immediately filed an objection to this designation of dates,

---

[1] As explained below, the trial court subsequently found that the two references to "Respondent" in paragraph 2 of the order were typographical errors and that the paragraph should have referred to the "Petitioner," that is, the grandmother.

however, because the child's school year was scheduled to begin before then, so she would be attending school throughout that week. The trial court, however, did not rule on the objection prior to August 13, the date the designated week of visitation was to begin.

On August 13, the mother's attorney, Singleton, sent a letter to the grandmother's attorney stating that the mother had just learned that the grandmother intended to pick up the child from school each afternoon that week and to keep her overnight, pursuant to the mother's designation of dates. Singleton's letter stated that, based upon the grandmother's objection to the dates and the absence of either a court order ruling on the objection or any communication between the parties' attorneys regarding visitation dates while the mother's appeal from the visitation order was pending, "there does not appear to be a legal basis for [the child's] school to release [her] into [the grandmother's] custody." Singleton also stated that the mother was going to pick up the child from school each day of that week, as she was entitled to do pursuant to the parenting plan executed by her and the child's father. In other words, the letter notified the grandmother that she would not be allowed to exercise her seven days of uninterrupted summer visitation with the child that week after all. In response, the grandmother's attorney notified Singleton that he was going to file

4

a contempt petition against the mother due to her actions, which, according to the letter, "defy a polite description."

The grandmother, however, was apparently not aware of the attorneys' communications when she went to the child's school to pick her up for visitation on the afternoon of August 13. At that time, school officials told her that the school's policies did not allow it to release the child to her because she was not the child's parent. It is undisputed that the mother had spoken with school officials earlier that day and had given them copies of certain documents, including the visitation order, her designation of dates for summer visitation, and the grandmother's objection to such dates.

The next afternoon, August 14, the grandmother again went to the child's school to pick her up for visitation. She was unable to do so, however, because, unbeknownst to the grandmother, the mother had gone to the school and had picked up the child before the end of the school day. School officials again informed the grandmother that the school would not release the child to her, and, in support of such refusal, they showed her a copy of a letter written by Singleton that the school had received. They also showed the grandmother a copy of an e-mail the school had

received from its Executive Director. The August 14 e-mail stated, in relevant part, that the Executive Director had been

> made aware of the various letters, emails, phone calls, and other correspondence over the past few days with staff at the elementary campus where [the child] is a student. To be honest, the sheer volume and types of communication about who is able to pick up [the child] from school is overwhelming and confusing and places [the child] and our school staff in a potentially uncomfortable situation. Clearly, no matter what the school does, one party will be angry and upset. Though there are various legal points being made in all of the correspondence we have received, *there does not appear to be clearly established visitation with [the child's] grandmother for this week*, so, our position would be that [the child's] mother and/or father can pick [the child] up from school until another court order clearly states otherwise.

(Emphasis supplied.) Given these circumstances, the grandmother decided not to make any further attempts to exercise her summer visitation that week.

A few days later, however, the grandmother's attorney sent a letter to Singleton stating that the grandmother had selected August 23 as the date she wanted to exercise her monthly, Thursday overnight visitation (hereinafter, "monthly visitation"), pursuant to paragraph 2 of the visitation order. Singleton responded with a two-sentence letter, stating that paragraph 2 of the visitation order "does not appear

6

to grant [the grandmother] the rights referenced in your letter."[2] The grandmother's attorney immediately responded with a letter that threatened to file a second petition for civil and criminal contempt and OCGA § 9-15-14 attorney fees if the grandmother was not allowed to exercise her monthly visitation, and it stated, in part, as follows:

> If you are referring to the *clear typo* [in paragraph 2 of the visitation order] that references "Respondent" rather than "Petitioner" having the right to have the child, would that mean that [the trial court] changed custody from [the mother] to the child's father? This would be as preposterous as the position you and your client seem to be now taking. . . . [B]y the clear terms and intent of the [Visitation] Order, [the grandmother] gets to have [the child] with her tomorrow [(Thursday, August 23)] until Friday morning.

(Emphasis supplied.) On August 23, Singleton responded that,

---

[2] As shown above, that paragraph stated as follows:

2. During the school year, August through May, *Respondent* [to the visitation petition, i.e., the mother,] shall have one (1) Thursday night with [the child] per month. The designated Thursday night shall correspond with [the child's] visitation with her father . . . that is to begin the following Friday. *Respondent* shall pick [the child] up from school on the designated Thursday and return [the child] to school the following Friday morning.

(Emphasis supplied.)

7

with respect to seeking contempt against [the mother], your letter characterizes the language in paragraph 2 of the [Visitation] Order as a "typo." [The mother], however, is "entitled to rely on the plain terms of a court order until such provisions are modified by the court." [Cit.] Thus, there does not appear to be a legal basis for filing [a] contempt motion.

That same day, the grandmother went to the school to pick up her granddaughter, but school officials refused to release the child to her. They showed her a copy of Singleton's August 23 letter (above) that they had received and informed her that, because of the apparent error in the visitation order regarding the term "respondent," the school would not release the child to her until the order was corrected.

Following this incident, the grandmother filed a second motion asking the court to find the mother in contempt of the visitation order and to award her attorney fees associated with bringing the motion against the mother, Singleton or both, pursuant to OCGA § 9-15-14 (a) and/or (b). During the contempt hearing, Singleton defended the mother's designation of the week of August 13 for the grandmother's week of summer visitation – despite the fact that the child would be in school that entire week – by arguing that the visitation order said "nothing about [allowing the visitation during] the summer or restricting it to summer vacation." As shown above, however,

the order specifically stated that the grandmother shall have seven "uninterrupted" days of visitation "during the *summer* months of June, July, or August," and it followed that provision with a separate provision about the monthly overnight visits that began, "*During the school year*, August through May . . . ."[3] (Emphasis supplied.)

Further, Singleton asserted that the mother "didn't interfere" with the grandmother's visitation on August 14, stating that, when the grandmother arrived at the school that afternoon to pick up the child, "my client was not present." The undisputed evidence shows, however, that the mother was not present *because she intentionally picked up the child before the end of that school day and took her home*. And, despite having designated the week of August 13 for the grandmother's week-long "summer" visitation, and despite being notified that the grandmother intended to exercise that visitation, the mother continued to assert that the grandmother did not have the right to visitation that week and, as a result, she intentionally did not notify the school that the grandmother had permission to pick up the child from school.

---

[3] In addition, in her report, the GAL recommended that the court give the grandmother "14 consecutive days of *summer vacation*" with the child, "uninterrupted by time with [the mother]." (Emphasis supplied.)

On the issue of why the grandmother was denied the right to pick up the child from school on August 23 for her monthly visitation, the mother testified that, because paragraph 2 of the visitation order referred to the "respondent" instead of the "petitioner," and because she was the "respondent" in the visitation action, it "seem[ed] pretty clear" that the order did not give the grandmother visitation once a month on a Thursday night. When asked if it was true that the use of the term "respondent" was clearly a typographical error, especially when considered in the context of the entire order, she answered that the order "reads what it reads" and, as a result, she believed that it did not give the grandmother Thursday overnight visitation.[4]

Further, Singleton argued that the mother "was not present" at the school when the grandmother arrived on August 23; that, instead, it was the *school* that refused to release the child to her; and that the school had made "its own decision [on that issue] . . . independently of [the mother]." It is undisputed, however, that the mother provided school officials with the documents that allegedly supported her claim that the visitation order did not grant the grandmother monthly visitation rights. In

---

[4] Notably, in her written report, the GAL specifically recommended that the child have overnight visitation with her grandmother "one Thursday per month . . . from after school on Thursday until [the child's] return to school on Friday morning."

10

addition, despite being told by school officials that they could not release the child to the grandmother because it was unclear whether the visitation order authorized it, the mother never notified the school that the order contained an obvious typographical error, nor did she (as the child's parent) ever authorize the school to allow the grandmother to pick up the child from school for visitation.

In response to the mother's hearing testimony about what she believed the visitation order allowed, the court stated that it found such testimony to be completely incredible. Further, the court characterized Singleton's numerous objections as "ridiculous," "inappropriate" and "unprofessional," and stated that the legal position he expressed about the language of the visitation order was "absolutely frivolous." In fact, the court specifically stated that, "I don't think that there is any reasonable interpretation that you could take of that [visitation] order other than . . . the fact that this was a complete clerical error[.] . . . [The error] was completely obvious on the face of the document." Subsequently, in its written order finding the mother in civil contempt and awarding attorney fees to the grandmother, the court ruled, in relevant part, as follows:

> The Court finds that Respondent [(the mother)] selected the dates of the summer visitation to occur from August 13-19, 2012[.] . . . Petitioner

11

[(the grandmother)] attempted to exercise the visitation [with the child] during the week of August 13, 2012. The Court finds that Respondent willfully prevented Petitioner from exercising this visitation.

The Court further finds that Petitioner attempted to have visitation with the child on Thursday, August 23, 2012, but Respondent refused this visitation due to a typographical error in the Temporary Order, which provided that *Respondent*, rather than Petitioner, should have the child for one (1) Thursday night. The Court also finds that counsel for Petitioner attempted, in good faith, to resolve the obvious typographical error. The Court finds that Respondent's claim that Petitioner should not be afforded the Thursday night visitation because of this typographical error is without merit and was made in bad faith. The Court also finds that Respondent's counsel unnecessarily expanded this litigation; asserted a defense with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the defense; defended the action in a manner that lacked substantial justification; and defended the action in a manner that was interposed for delay. . . .

Based upon the foregoing, the Court finds Respondent in willful civil contempt of this Court's Temporary Order by not allowing Petitioner to have the visitation with her granddaughter, as set forth in the Temporary Order. . . .

[T]he Court hereby awards Petitioner the sum of $6,500.00 as attorney's fees and expenses of litigation for having to prosecute her two (2)

Motions for Civil and Criminal Contempt. The Court assesses these attorney's fees and expenses of litigation pursuant to OCGA § 9-15-14 (a) and (b) against both Respondent and her counsel. Respondent shall pay one-half (½) of said sum directly to Petitioner's counsel, via certified funds, on or before October 26, 2012, and Respondent's counsel shall pay one-half (½) of said sum directly to Petitioner's counsel on or before October 26, 2012.

(Emphasis supplied.) Both the mother and Singleton appeal from this order.

1. Before reaching the merits of the instant appeal, we must address the issue of whether the trial court was authorized to find the mother in contempt of the visitation order given the fact that this Court subsequently vacated the order on appeal and remanded the case to the trial court with direction to issue a new order that included findings of fact, as required by OCGA § 19-7-3 (c).

"[I]f the trial court has jurisdiction to make [an] order, it must be obeyed however wrong it may be. [It follows that the] disobedience of an unsuperseded order within the jurisdiction of a court is a contempt of court, even [if] the order is erroneous." (Punctuation and footnotes omitted.) *Stearns v. Williams-Murphy*, 263 Ga. App. 239, 245 (4) (587 SE2d 247) (2003). See *Powell v. State*, 166 Ga. App. 780, 781 (1), (2) (305 SE2d 646) (1983) (Although the trial court failed to include required

findings of fact in its written paternity order, it was authorized to find that the appellant's willful violation of the order constituted contempt of court.).[5]

Accordingly, we conclude that the visitation order was enforceable at the time the mother violated its provisions and that, as a result, the trial court was authorized to find the mother in contempt of the order.

*Case No. A13A0784*

2. The mother contends that there was insufficient evidence presented to support the court's finding that she was in willful civil contempt of the visitation order. We disagree.

(a) As an initial matter, contrary to the mother's repeated assertions in her appellate brief that the trial court failed to designate whether it was finding her in civil or criminal contempt, the court's order specifically states that it found her to be in "willful *civil* contempt" of the visitation order by not allowing the grandmother to have visitation with the child pursuant to that order.[6] (Emphasis supplied.) The court

---

[5] See also *Beckham v. O'Brien*, 176 Ga. App. 518, 521 (336 SE2d 375) (1985) (A person may not simply ignore a court order that he believes is erroneous. "[I]f he does so, he does so at his own peril and must assume the risk of being held in contempt.") (citations omitted).

[6] Although the mother, in her appellate brief, purports to quote that sentence from the court's contempt order, she inexplicably and erroneously omits the word

14

also expressly provided that the mother could purge herself of contempt by ensuring that the grandmother had visitation with the child on specific dates from October 2012 through January 2013, in addition to the visitation she was awarded in the visitation order. Accordingly, the order shows on its face that the court found the mother to be in willful civil contempt. See *Stewart v. Tricord*, 296 Ga. App. 834, 837 (2) (a) (676 SE2d 229) (2009) ("A criminal contempt citation imposes unconditional punishment for prior contempt, to preserve the court's authority and to punish disobedience of its orders. . . . Civil contempt, on the other hand, is conditional punishment intended to coerce the contemnor to comply with the court order.") (citation and punctuation omitted).

(b) "The appropriate standard of proof in a civil contempt case is preponderance of the evidence." (Citation omitted.) *In re Harvey*, 219 Ga. App. 76, 80 (464 SE2d 34) (1995). On appeal from an order finding a party in civil contempt, "if there is any evidence from which the trial court could have concluded that its order had been violated, [this Court is] without power to disturb the judgment absent an

---

"civil," then presents six pages of argument on the standards that apply to a finding of criminal contempt, standards which are clearly inapplicable to the instant case.

15

abuse of discretion." (Citation and punctuation omitted.) *Carden v. Carden*, 276 Ga. App. 43, 44 (622 SE2d 389) (2005).

We find that the undisputed evidence in this case, as set out above, is more than sufficient to support the trial court's conclusion that the mother willfully violated the visitation order by preventing the grandmother from exercising her visitation rights pursuant to that order. Accordingly, we find that the court did not abuse its discretion in ruling that the mother was in willful civil contempt.

*Case Nos. A13A0783 and A13A0784*

In these appeals, the mother and her attorney, Singleton (collectively, "the appellants"), challenge the court's award of attorney fees to the grandmother, pursuant to OCGA § 9-15-14 (a) and (b).[7]

3. The appellants contend that the court erred in awarding attorney fees under OCGA § 9-15-14 (a), arguing that the only defenses they asserted in the contempt action raised justiciable issues of law and fact and that there was evidence to support those defenses. The record, however, does not support this argument.

---

[7] "The damages authorized by [OCGA] § 9-15-14 are intended not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with abusive litigation." (Citation and punctuation omitted.) *Abt v. Abt*, 289 Ga. 166, 167 (709 SE2d 806) (2011).

16

OCGA § 9-15-14 (a) provides as follows:

In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

"OCGA § 9-15-14 (a) therefore provides for a mandatory award upon a finding of the absence of any justiciable issue of law or fact." (Citation omitted.) *Haney v. Camp*, 320 Ga. App. 111, 114 (2) (739 SE2d 399) (2013). Moreover, "[t]his Court will affirm a lower court ruling made pursuant to OCGA § 9-15-14 (a) if there is 'any evidence' to support it." (Citation omitted.) *Brewer v. Paulk*, 296 Ga. App. 26, 29 (1) (673 SE2d 545) (2009).

The undisputed evidence in the record supports the court's finding that, in order to justify the denial of monthly overnight visitation rights to the grandmother, the appellants solely and consistently relied on the fact that paragraph 2 of the visitation order referred to "Respondent" instead of "Petitioner." The trial court was

17

authorized to conclude that this misnomer constituted an obvious typographical error, that both appellants *knew* it was an error, and that their claims to the contrary lacked merit and were made in bad faith. Thus, to the extent the appellants argue that the court erred in finding that they improperly defended the contempt action based on the typographical error in the visitation order, we find this assertion to be disingenuous and completely without merit.

Moreover, if the appellants are trying to convince this Court that they reasonably believed that the visitation order did not contain a typographical error, then they are essentially arguing that the paragraph at issue reflected the *actual intent* of the trial court to give the *mother, with whom the child resided*, monthly overnight visitation *in addition to her actual physical custody of the child*. Such an assertion is patently illogical and preposterous.

Consequently, the trial court did not err in awarding the grandmother attorney fees pursuant to OCGA § 9-15-14 (a).

4. The appellants also contend that the court erred in awarding attorney fees under OCGA § 9-15-14 (b), again arguing that they did not rely on the typographical error as a defense to the contempt motion or engage in other conduct triggering liability under that statute. OCGA § 9-15-14 (b) provides as follows:

18

The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.] . . . As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

"[A]n award under OCGA § 9-15-14 (b) involves consideration of the conduct of the party against whom an award is sought, and the conduct of that party's counsel along with the impact of that conduct on the attorney fees incurred by the opposing party." (Citation and punctuation omitted.) *Citizens for Ethics in Govt. v. Atlanta Dev. Auth.*, 303 Ga. App. 724, 736 (3) (694 SE2d 680) (2010). Finally, "[b]ecause an award of attorney fees and expenses of litigation is discretionary under subsection (b), the standard of review by an appellate court is whether the trial court abused its discretion in making the award." (Punctuation and footnote omitted.) *MacDonald v. Harris*, 266 Ga. App. 287, 288 (597 SE2d 125) (2004). See *Stewart v. Tricord*, 296 Ga. App. at 836 (1) ("An award under OCGA § 9-15-14 (b) is entirely within the

19

discretion of the trial court after considering all the facts and law.") (citations and punctuation omitted).

Given the evidence presented and our ruling in Division 3, supra, we find that the trial court did not abuse its discretion in awarding the grandmother attorney fees pursuant to OCGA § 9-15-14 (b).

5. The appellants contend that there was no evidence presented to support the court's award in the amount of $6,500, arguing that they objected to the grandmother's attorney's statements regarding the amount of attorney fees that the grandmother had incurred as a consequence of having to file and prosecute the motion for contempt.

"Attorneys are officers of the court and their statements in their place, if not objected to, serve the same function as evidence." (Punctuation and footnote omitted.) *In re Estate of Bell*, 274 Ga. App. 581, 583 (618 SE2d 194) (2005). See *Rank v. Rank*, 287 Ga. 147, 149 (2) (695 SE2d 13) (2010) ("In the absence of an objection, counsel's evidentiary proffers to the trial court during a hearing will be treated on appeal as the equivalent of evidence.") (citations omitted); *Sams v. State*, 197 Ga. App. 201, 204 (5) (397 SE2d 751) (1990) ("An officer of the court may make a statement *in his place* which is taken to be prima facie true unless verification of such

statement is required by the opposing party at the time the statement is made.") (citation and punctuation omitted; emphasis in original). Contrary to the appellants' assertions in their appellate briefs, the record shows that neither objected to the statements of the grandmother's counsel regarding the amount of attorney fees at issue.[8] See *Rank v. Rank*, 287 Ga. at 149 (2) ("A party cannot ignore during trial that which he or she thinks to be error, take a chance on a favorable outcome, and complain later.") (citation and punctuation omitted). Consequently, the trial court did not err in considering the grandmother's attorney's statements in his place regarding the amount of attorney fees the grandmother had incurred. See id.; *In re Estate of Bell*, 274 Ga. App. at 584. As a result, the appellants' contention that there was no evidence to support the amount of attorney fees awarded is without merit.

6. The appellants argue that the court erred by failing to assess the reasonableness of the requested attorney fees. Pretermitting whether this argument is supported by the record, however, the appellants waived this issue on appeal by

---

[8] Instead, the contempt hearing transcript shows that Singleton objected to the opposing attorney's statement that he (Singleton) had "notified the school [on August 13] and he got involved with the school saying, don't you dare let this child go home with her grandmother because the mother has primary custody and, by gosh, this isn't going to happen." Singleton objected and moved to strike that "commentary" from the record, arguing that there had been no evidence presented to support it.

failing to raise it in the court below. It is axiomatic that, on appeal, "only issues properly raised before the trial court will be considered. Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court." (Citations and punctuation omitted.) *City of Dalton v. Smith*, 210 Ga. App. 858, 859 (1) (437 SE2d 827) (1993).

7. The appellants contend that the court erred in awarding fees directly to the grandmother's counsel instead of to the grandmother. "[A]ny award of fees or expenses under OCGA § 9-15-14 (a) 'shall be awarded to any party' and not directly to the attorney for the party. The court may, of course, specify the amounts due to each attorney or law firm, but the award itself, as specified in the statute, is for the benefit of the party litigant." (Citations and emphasis omitted.) *Brewer v. Paulk*, 296 Ga. App. at 31 (2).

Pretermitting whether the appellants waived this issue on appeal by failing to raise it in the court below,[9] the court's order specifically states that it *awarded the grandmother* attorney fees and expenses for having to prosecute her two motions for contempt. The fact that the court then ordered each of the appellants to send their

[9] See *City of Dalton v. Smith*, 210 Ga. App. at 859 (1).

22

portions of the attorney fees to the grandmother's counsel does not undermine the fact that the court awarded the fees to a party, i.e., the grandmother, as required by OCGA § 9-15-14 (a). It follows that there was no error.

8. The grandmother's motion to dismiss Singleton's appeal, Case No. A13A0783, on jurisdictional grounds is denied.

9. Finally, this Court finds that the appellants' arguments on appeal completely lacked merit and, thus, we deem these appeals to be frivolous. Consequently, we sua sponte impose a penalty of $1,000 against each of the appellants personally, i.e., Singleton in Case No. A13A0783 and Van Leuvan in Case No. A13A0784, pursuant to Court of Appeals Rule 15.[10]

---

[10] Court of Appeals Rule 15 (b) states as follows:
The panel of the Court ruling on a case, with or without motion, may by majority vote impose a penalty not to exceed $2,500.00 against any party and/or party's counsel in any civil case in which there is a direct appeal, application for discretionary appeal, application for interlocutory appeal, or motion which is determined to be frivolous.

See also Court of Appeals Rule 15 (c) ("The imposition of such penalty shall constitute a money judgment, in favor of appellee against appellant . . . . Upon filing of the remittitur in the trial court, the penalty may be collected as are other money judgments.").

*Judgments affirmed. Andrews, P. J., concurs. Dillard, J., concurs in the judgment only.*